# EXHIBIT 3

# MARIO BAILEY DECLARATION

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BELINDA SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16CV7441 |
| | ) | |
| THE UNIVERSITY OF CHICAGO | ) | Judge Aspen |
| MEDICAL CENTER,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF MARIO BAILEY

Mario Bailey, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am a resident of Illinois.

2. I am over 18 years of age and competent to give the testimony in this declaration.

3. I have personal knowledge of the facts in this declaration.

4. The University of Chicago Medical Center ("UCMC") is a not-for-profit, academic medical center located in Chicago, Illinois.

5. I am currently employed by UCMC as Manager of People Strategy. As of June 4, 2018, I started supporting Ingalls Memorial Hospital, which is affiliated with UCMC.

6. In my role at UCMC, I had responsibility for providing Human Resources support to both clinical and non-clinical work units throughout the Medical Center. I had access to employee personnel information, including employment history, employee performance evaluations, employee discipline, and supervisor assignments. In my role at UCMC, I had responsibility for administering UCMC's various personnel policies. As a result, I am familiar

---

[1] The Defendant was improperly named in the Complaint as "University of Chicago Medical Centers Food Service." There is no such entity. The proper Defendant is The University of Chicago Medical Center.

with UCMC's policies regarding equal employment opportunity, anti-discrimination, discipline, termination and employee appeals from termination decisions.

7. UCMC has an Equal Employment Opportunity, Affirmative Action, Anti-Harassment and Discrimination policy, and a separate Human Resource policy (HR204 "Employment Process"), that strictly prohibit discrimination on the basis of age, race, ancestry, color, religion, sex, sexual orientation, marital or parental status, national origin, disability or veteran status, in all employment, promotion, transfer and disciplinary decisions. The Equal Employment, Affirmative Action, Anti-Harassment and Discrimination policy encourages employees to contact the Human Resources Department regarding "[q]uestions and complaints concerning possible discrimination in employment."

8. UCMC's Equal Employment Opportunity/Affirmative Action/Anti-Harassment and Discrimination policy contains the following statement regarding Equal Employment Opportunity.

> It is the policy of The University of Chicago Medical Center (UCMC) to recruit, hire, promote, com-pensate, and administer all employment practices and policies without regard to race, color, religion, sex, sexual orientation, marital status, civil union status, national origin, ancestry, age, parental status, disabled status, veteran status, or any other legally protected classification, in accordance with applicable local, state, and federal equal employment opportunity laws. It is UCMC's policy to hire and promote the most qualified applicants and to comply with all applicable law.
>
> This policy governs terms and conditions of employment, including, but not limited to, policies and practices affecting recruitment, recruitment advertising, hiring, promotion, demotion, termination, transfers, reclassifications, selection for training, compensation, benefits, UCMC-sponsored educational and social/recreational programs, and all other aspects of employment. Similarly, UCMC's EEO and anti-harassment and discrimination policies extend to every aspect of the work environment, including abuse of email and all other forms of communication.

2

The policy contains the following statement regarding Anti-Harassment and Discrimination:

UCMC is committed to providing its employees with a professional work environment free from harassment, discrimination or any unwelcome conduct based on an individual's race, color, sex, religion, national origin, age, disability, marital status, parental status, sexual orientation, or any other legally protected classification. UCMC has "zero tolerance" for such conduct. This commitment is in keeping with UCMC's Values, its equal employment opportunity policy and practices, and with applicable statutes and regulations. Violations of this Statement will result in corrective action, up to and including termination of employment. Any conduct, whether verbal, physical or visual, that creates a hostile, offensive, or intimidating work environment or that unreasonably interferes with an individual's work environment constitutes harassment under this Statement.

\* \* \*

UCMC prohibits any employee, co-worker, supervisor, manager, outside vendor, consultant, patient or resident, agent, officer, or director of UCMC from harassing any employee or applicant. UCMC views such actions as extremely serious misconduct. It is each employee's responsibility to ensure that these prohibited activities do not occur.

UCMC believes that harassing conduct or language directed at UCMC employees by outside vendors, consultants, patients/residents or their family members, visitors independent contractors, etc. is an affront to UCMC's ethics, values, and practices. As representatives of UCMC, employees should state that harassing conduct or language violates UCMC policies. Similarly, employees are prohibited from engaging in any harassing conduct toward outside vendors, consultants, patients/residents or their family members, visitors, independent contractors, or others.

Any employee who feels that they have been or are being harassed, or have witnessed any conduct that is inconsistent with this Statement, should immediately bring it to the attention of their department head, to Human Resources, or to the UCMC Compliance Resource Line at 1/877-440-5480. Complaints will be investigated and resolved in a thorough and timely manner. Every effort will be made to ensure confidentiality throughout the complaint/investigation process, consistent with the need to conduct a thorough investigation. After a determination has been made, UCMC will take decisive and appropriate remedial action.

3

QB\52505800.1

> Retaliation against anyone who complains in good faith of harassment or discrimination, who provides information relating to such complaints, who otherwise cooperates in any harassment or discrimination investigation, or who otherwise pursues his/her rights under the law is in itself a violation of this policy. Employees who experience or witness any conduct that they believe to be retaliatory are to immediately follow the reported procedures stated above.

A true and correct copy of the above policy is attached to this Declaration as Exhibit A.

9. UCMC has a Workplace Civility Policy (HR1012) which requires the "highest standards of civility and decency" and respect for fellow employees. A true and correct copy of the above policy is attached to this Declaration as Exhibit B.

10. UCMC has a Workplace Aggression Policy (HR614) which prohibits verbal or non-verbal threats, gestures, offensive or intimidating comments, which could lead a reasonable person to believe that he/she is in danger of personal harm or fear for their safety or of their personal possessions, property or other persons. A true and correct copy of the above policy is attached to this Declaration as Exhibit C.

11. UCMC has a policy regarding grounds for Employee Termination (HR212) which strictly prohibits "engaging or participating in physical violence and/or the threat of physical violence or other inappropriate conduct against any person or property," and provides that a single violation "may result in immediate discharge." A true and correct copy of the above policy is attached to this Declaration as Exhibit D.

12. I have reviewed Belinda Smith's personnel files maintained in the ordinary course of business at UCMC.

13. Ms. Smith was employed at UCMC from February 2005 to June 2015.

14. UCMC contracts with an outside provider to manage food services operations at its hospital facilities. Prior to April 2014, food service operations at UCMC were managed by

4

Sodexho USA ("Sodexho"). Since April 2014, Aramark Healthcare Hospitality ("Aramark") has managed food services at UCMC. *Id.* Ms. Smith worked in the Food Services Department, under the supervision of managers from Sodexho and, later, Aramark.

15. On February 8, 2013, Plaintiff was issued a Documented Verbal Warning from her supervisor at Sodexho for "unsatisfactory work performance" and "performing job assignment grossly inconsistent with outlines (sic) job duties and responsibilities". A true and correct copy of the February 8, 2013 documented Verbal Warning from her personnel file is attached to this Declaration as Exhibit E.

16. On November 14, 2013, Plaintiff was issued a Written Warning for "unsatisfactory work performance". A true and correct copy of the November 14, 2013 Written Warning from her personnel file is attached to this Declaration as Exhibit F.

17. On April 9, 2014, Plaintiff received another Written Warning from Sodexho management for "unsatisfactory work performance" and "failure to comply with Pride Values/Care Standards/Workplace Civility Policies". A true and correct copy of the April 9, 2014 Written Warning from her personnel file is attached to this Declaration as Exhibit G.

18. Plaintiff was suspended by Sodexho management for unsatisfactory work performance for one week in April 2014.

19. After Aramark assumed management for food services at UCMC in April 2014, Plaintiff continued to exhibit unacceptable performance and behavior inconsistent with UCMC policies. She received multiple written warnings and final written warnings. After an incident where she exhibited hostile behavior in the workplace, she was suspended again in February 2015.

5

20.     On June 1, 2015, Plaintiff threatened fellow employees and supervisors stating "I will fight people in here today." Her management suspended her again effective June 5, 2015.

21.     Shortly thereafter, Aramark management recommended that UCMC terminate Plaintiff's employment.

22.     Based on Plaintiff's violation of several UCMC policies, including its policy on Workplace Civility, Workplace Aggression Policy, and Employee Termination Policy, UCMC decided to terminate Plaintiff's employment, effective June 5, 2015.

FURTHER DECLARANT SAYETH NOT

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON:   June 25, 2018

_____
MARIO BAILEY

6

QB\52505800.1

# BAILEY DECLARATION

# EXHIBIT A

The University of Chicago Medical Center
Policy and Procedure Manual

**Equal Employment Opportunity/Affirmative Action/Anti-Harassment and Discrimination**
Issued: June 1989
Revised: November 2012
Administrative Policy 00-04 Human Resources Section 201

### Policy

The University of Chicago Medical Center (UCMC) provides equal employment opportunity to all applicants and employees without regard to race, color, religion, sex, sexual orientation, marital status, civil union status, national origin, ancestry, age, parental status, disabled status, veteran status, or any other legally protected classification, in accordance with applicable law.

UCMC is also committed to providing a professional, respectful and safe work environment that is free from harassment or discrimination on the basis of race, color, religion, sex, sexual orientation, marital status, civil union status, national origin, ancestry, age, parental status, disabled status, veteran status, or any other legally protected classification, in accordance with applicable law.

UCMC prohibits any form of unlawful harassment and will not tolerate discrimination against any employee by anyone, including co-workers, supervisors, patients, vendors, visitors, contractors or any other third party. The Vice President, Chief Human Resources Officer or designee is the UCMC Affirmative Action Officer (AAO) and is responsible for the administration of the EEO policy and the affirmative action program. Note: Duplicate policy (Equal Employment Opportunity/Affirmative Action, Section 201) appears in the Personnel Policy and Procedure Manual.

### Religious Discrimination

The University of Chicago Medical Center prohibits discrimination on the basis of religion. Employees may engage in appropriate religious expression in the workplace as permitted by law. Religious expression in the workplace may take the forms of certain types of dress or head covering, wearing jewelry, discussion of religion, or the display of religious items in an employee's immediate work area. The Medical Center will reasonably accommodate religious expression in the workplace unless to do so creates an undue hardship for the Medical Center, such as interfering with patient care or applicable legal requirements such as the prohibition against the wearing of jewelry in the OR, disrupting the workplace, imposing additional duties on co-workers, creating an impression that there is a preference for members of certain religions or if it could result in harassment or intimidation of others.

The reasonable accommodation process imposes responsibilities and obligations on both the employee requesting the accommodation and the Medical Center. For example, the employee seeking the accommodation is obligated to make the Hospitals aware of his or her need for religious accommodation. Once the request is made, the Medical Center will explore reasonable accommodations to address the employee's religious belief or practice. The employee seeking the accommodation is obligated to cooperate with the Medical Center's attempts to accommodate his or her request. The Medical Center is not obligated to provide the accommodation preferred by the employee, as long as the accommodation it does provide effectively eliminates any religious conflict.

An employee seeking a reasonable accommodation should first raise the issue with his or her supervisor. If, after discussion with the employee, the supervisor believes that the employee's religious expression in the

1



workplace cannot be reasonably accommodated or the employee rejects the accommodation offered, the supervisor must consult the their designated Human Resources-Employee Labor Relations Manager before any final decision on the employee's request is made. If a supervisor believes that an employee's religious expression is disruptive or harassing to others and, after discussing the matter with the employee, believes that the employee is not cooperating in an attempt to resolve the matter, the supervisor must bring the matter to the their designated Human Resources-Employee Labor Relations Manager before any adverse action is taken against the employee.

### Definition
Employment refers to all terms, conditions, and privileges of employment including: Recruiting, Hiring, Probationary Periods, Training & Development, Job Assignments, Promotions, Rates of Pay and Benefits, Transfer, Educational Assistance, Layoff & Recall, Terminations, Retirement Programs, Supervision, Social & Recreational

### Legal Requirements
EEO notices are posted throughout UCMC as required by law.
All advertisements of UCMC position openings include a statement affirming that UCMC is an equal opportunity employer.

### AAO Duties
The Director of Employee/Labor Relations is responsible for the following:
- developing an affirmative action program
- disseminating the EEO policy information
- periodically reviewing compliance with EEO regulations
- assisting in identifying problem areas
- investigating complaints promptly
- assisting management in arriving at solutions to problems
- serving as liaison between UCMC and enforcement agencies

### Questions/Complaints
Questions and complaints concerning possible discrimination in employment and sexual harassment should be directed to the Employee Labor Relations section of the Human Resources Department.
Assistance will be provided in a confidential manner. If a supervisor believes that an employee's religious expression is disruptive or harassing to others and, after discussing the matter with the employee, believes that the employee is not cooperating in an attempt to resolve the matter, the supervisor must bring the matter to the Human Resources Department before any adverse action is taken against the employee.

### Policy Compliance
All UCMC employees must act at all times in accordance with the letter and the spirit of UCMC's Anti-Harassment and Discrimination and Equal Employment Opportunity Statement.
UCMC employees are responsible for helping to ensure that the workplace is free from all forms of prohibited discrimination and harassment.

Supervisors/directors should discuss this policy with their employees, promptly report any violations or suspected violations to the Human Resources Department, and work to ensure that this policy is consistently enforced.
To help insure compliance with this policy, supervisors and managers should contact the Human Resources-Employee Labor Relations section with questions or concerns about their employment decisions and the work environment that may result from those decisions.

2

UCMC0373

**Senior Executive, Human Resources**
The Vice President and Chief Human Resources Officer supports and implements affirmative action programs and EEO policies in all employment procedures.

**Interpretation, implementation and revision**
Human Resources (2-1091) is responsible for the interpretation, implementation and revision of this policy.

Sharon O'Keefe
President, University of Chicago Medical Center

## THE UNIVERSITY OF CHICAGO MEDICAL CENTER STATEMENT ON EQUAL EMPLOYMENT OPPORTUNITY, AND ANTI-HARASSMENT AND DISCRIMINATION
### EQUAL EMPLOYMENT OPPORTUNITY

It is the policy of The University of Chicago Medical Center (UCMC) to recruit, hire, promote, com-pensate, and administer all employment practices and policies without regard to to race, color, religion, sex, sexual orientation, marital status, civil union status, national origin, ancestry, age, parental status, disabled status, veteran status, or any other legally protected classification, in accordance with applicable local, state, and federal equal employment opportunity laws. It is UCMC's policy to hire and promote the most qualified applicants and to comply with all applicable law.

This policy governs terms and conditions of employment, including, but not limited to, policies and practices affecting recruitment, recruitment advertising, hiring, promotion, demotion, termination, transfers, reclassifications, selection for training, compensation, benefits, UCMC-sponsored educational and social/recreational programs, and all other aspects of employment. Similarly, UCMC's EEO and anti-harassment and discrimination policies extend to every aspect of the work environment, including abuse of email and all other forms of communication.

### ANTI-HARASSMENT AND DISCRIMINATION

UCMC is committed to providing its employees with a professional work environment free from harassment, discrimination or any unwelcome conduct based on an individual's race, color, sex, religion, national origin, age, disability, marital status, parental status, sexual orientation, or any other legally protected classification. UCMC has "zero tolerance" for such conduct. This commitment is in keeping with UCMC's Values, its equal employment opportunity policy and practices, and with applicable statutes and regulations. Violations of this Statement will result in corrective action, up to and including termination of employment.

Any conduct, whether verbal, physical or visual, that creates a hostile, offensive, or intimidating work environment or that unreasonably interferes with an individual's work environment constitutes harassment under this Statement. Harassment includes, but is not limited to, the following:

- Physical or verbal abuse (demeaning, insulting comments)
- Derogatory or off-color jokes or comments
- Slurs (racial, ethnic, religious, gender, age, etc.)
- Unwelcome physical contact of any nature
- Taunting or intending to provoke an employee
- Display or circulation of written materials or pictures (hard copy, via electronic mail, etc.) that are derogatory to employees, persons with disabilities or to racial, ethnic, religious or other protected groups
- Unwarranted and unfounded charges and complaints brought against a fellow employee with the intent to discredit, harass or in any way harm that employee
- Unwelcome and unsolicited sexual advances
- Requests for sexual favors used as a condition of employment or affecting any personnel decisions, such as hiring, promotion, transfer, performance reviews, or compensation

3

UCMC0374

• Employment opportunities or benefits granted to one individual over another as a result of submission to or rejection of sexual advances.

UCMC prohibits any employee, co-worker, supervisor, manager, outside vendor, consultant, patient or resident, agent, officer, or director of UCMC from harassing any employee or applicant. UCMC views such actions as extremely serious misconduct. It is each employee's responsibility to ensure that these prohibited activities do not occur.

UCMC believes that harassing conduct or language directed at UCMC employees by outside vendors, consultants, patients/residents or their family members, visitors independent contractors, etc. is an affront to UCMC's ethics, values, and practices. As representatives of UCMC, employees should state that harassing conduct or language violates UCMC policies. Similarly, employees are prohibited from engaging in any harassing conduct toward outside vendors, consultants, patients/residents or their family members, visitors, independent contractors, or others.

Any employee who feels that they have been or are being harassed, or have witnessed any conduct that is inconsistent with this Statement, should immediately bring it to the attention of their department head, to Human Resources, or to the UCMC Compliance Resource Line at *1/877-440-5480*. Complaints will be investigated and resolved in a thorough and timely manner. Every effort will be made to ensure confidentiality throughout the complaint/investigation process, consistent with the need to conduct a thorough investigation. After a determination has been made, UCMC will take decisive and appropriate remedial action. Retaliation against anyone who complains in good faith of harassment or discrimination, who provides information relating to such complaints, who otherwise cooperates in any harassment or discrimination investigation, or who otherwise pursues his/her rights under the law is in itself a violation of this policy. Employees who experience or witness any conduct that they believe to be retaliatory are to immediately follow the reported procedures stated above.

---

Sharon O'Keefe, President

Attachment #1

4

UCMC0375

# BAILEY DECLARATION

# EXHIBIT B



**THE UNIVERSITY OF**
**CHICAGO**
**MEDICINE**
THE UNIVERSITY OF CHICAGO
MEDICAL CENTER

| | | | |
|---|---|---|---|
| **POLICY NAME:** | WORKPLACE CIVILITY | **REVISED DATE:** | OCT. 2004 |
| **POLICY NUMBER:** | HR1012 | **ISSUE DATE:** | AUG. 2004 |
| **SECTION:** | HUMAN RESOURCES | **REVIEW DATE:** | DEC. 2012 |

**POLICY:**

The University of Chicago Medical Center (UCMC) seeks to achieve an environment of collaboration and teamwork. We are committed to the highest standards of civility and decency. Our desire is to promote and support a hospital community where all people will work together in an environment free of abusive or demeaning treatment.

**PURPOSE:**

We are dedicated to achieving quality patient care delivery in an environment of respect, tolerance, understanding and goodwill among all members of our diverse community. In this framework, we will listen, seek to understand, mentor and model behavior so that each of us can feel free to express ourselves in appropriate ways.

**DEFINITIONS:**

Civility

Civility is a demonstration of respect for others and their feelings, doing to and for others what we would have done unconditionally for ourselves.

Workplace Behavior

Workplace behavior is behavior that creates an atmosphere and environment that enhances and promotes respect for the integrity, dignity and worth of each and every human being.

**PROCEDURES:**

UCMC will continually monitor and assess the level of civility through on-going communication throughout the organization. While we will work toward a goal of fostering a culture that is civil, respectful and considerate, there may be, from time-to-time, individuals who may not behave in a way that reflects our vision. To address those situations the following process should be initiated:

1. Every effort should be made by individuals to resolve their issues quickly and directly between each other.

2. If the issue can't be resolved, seek the advice and support of the direct supervisor(s).

3. Supervisors should discuss the issues with the individuals involved, and make every effort to resolve the conflict.

4. The UCMC Office of Employee Relations or Labor Relations is available to assist in staff to staff issue resolutions.

Page 1 of 2

**EXHIBIT**

_10_

Smith 3/28/18

PENGAD 800-631-6989

UCMC0380

5. The Chair of each department will designate a representative to assist in Physician to Physician concerns.

6. Both the UCMC Office of Employee Relations or Labor Relations and representative of the Dean's office will jointly be involved in physician to staff issue resolution.

This policy will be administered consistent with the UCMC Service Pride Policy.


REFERENCES: None


CROSS-REFERENCES:

- HR601: UCMC Service Pride


ATTACHMENTS: NONE


_____

Terry Solem
Chief Human Resources Officer


_____

Sharon O'Keefe
President


Issue Date: August 6, 2004
Revised: October 2004
Reviewed: October 2004, October 2005, November 2009, December 2011, December 2012

UCMC0381

# BAILEY DECLARATION

# EXHIBIT C



THE UNIVERSITY OF
# CHICAGO
MEDICINE
THE UNIVERSITY OF CHICAGO
MEDICAL CENTER

| | | | |
|---|---|---|---|
| **POLICY NAME:** | WORKPLACE AGGRESSION | **REVISED DATE:** | OCT. 2004 |
| **POLICY NUMBER:** | HR614 | **ISSUE DATE:** | SEPT. 1999 |
| **SECTION:** | HUMAN RESOURCES | **REVIEW DATE:** | DEC. 2012 |

## POLICY:

The University of Chicago Medical Center is committed to providing an environment that protects the safety and health of patients, visitors and employees.

The provisions of this policy are applicable even if an outside law enforcement agency is involved.

## PURPOSE:

Accordingly, the Medical Center shall maintain a strict policy of zero tolerance toward violent, threatening or assaultive behavior or the threat of such behavior directed at any person (s) toward any person (s), such as patients, visitors, physicians or employees. Employees will be subject to termination, removal from the premises, arrest and prosecution for violating this policy. Visitors, patients and other non-Medical Center personnel who violate this policy will be subject to removal from the premises, arrest and prosecution.

## DEFINITIONS:

Prohibited Actions: Aggressive or violent actions directed toward any person or property including, but not limited to, any verbal or non-verbal communication, gesture, physical act or physical contact which would lead a reasonable person to feel threatened, intimidated, fear for their safety or the safety of their personal possessions and/or believe that he/she is in danger of personal harm.

Prohibited actions shall also include:

- Physical Assault, defined as physical contact without consent, of a threatening, intimidating or harmful nature, such as, but not limited to, hitting, biting, scratching, grabbing, holding, impeding movement, throwing of objects, wounding or causing physical harm to another person(s).
- Non-Physical Assault, defined as verbal or non-verbal threats, gestures, offensive or intimidating comments, made by one or more persons toward another person or persons, which would lead a reasonable person to believe that he/she is in danger of personal harm or fear for their safety or the safety of their personal possessions, property or other persons.
- Weapons Possession, including the use or possession of a weapon or instrument used as a weapon (such as, but not limited to firearms, knives, explosives or incendiary device); or chemical sprays (such as mace or pepper spray) which are used in an offensive or assaultive manner. Exceptions to this provision (e.g. use of possession by law enforcement personnel) must be authorized by the Security/Support Department.

Page 1 of 6

## PROCEDURES:

Progressive Corrective Action

Employees determined to have violated this Policy will be subject to corrective action, up to and including termination for a first offense.

If an employee is the alleged violator of this Policy, the Department of Human Resources, Employee/Labor Relations shall be provided with copies of all documents related to the incident, and the recommendations of the management staff involved.

Employee/Labor Relations shall thoroughly review the information and make a final recommendation to the Vice President and Chief Human Resources Officer. No employee may be terminated from the Medical Center without the written approval of the Vice President and Chief Human Resources Officer.

Scope of Responsibility

All employees are responsible for maintaining an aggression free workplace. The following describes the scope of each employee's responsibilities:

- Adhere to this policy and other Medical Center policies designed to make the workplace safe and secure.
- Not engage in any actions which violate this policy or which tend to create a threatening or intimidating atmosphere at the Medical Center.
- Immediately report concerns or observations of violence or potential violence to his/her supervisor; or to Security/Support Services at 2-6262 (or dial 1-2-3).

In addition to the above, Managers shall:

- Implement, maintain and communicate the Medical Center Workplace Aggression Policy to all employees.
- Ensure employees understand this Policy
- Enforce the rules fairly and uniformly.
- Be proactive in addressing and preventing potentially volatile ("powderkeg") situations.
- Attempt to safely defuse and stabilize a situation whenever possible.
- Contact a second supervisor or another employee to act as a witness to any violation of this Policy (to the extent possible).
- Ensure that injured employees receive medical attention from UCPCG if open or the Emergency Department. Non-employees who are injured should be treated in the Emergency Room.
- Notify the AOC and/or NAOC.
- Notify Employee/Labor Relations if any employee is the alleged offender or victim.
- Notify Risk Management.
- Conduct an investigation, including, but not limited to, separately interviewing the victim, witnesses, and alleged offender (if an employee) to the extent possible. Offer

- union representation to a unionized employee who is an alleged offender before they are interviewed by management. A non-involved manager should handle the investigation.
- An alleged employee offender should be informed that he/she is suspended pending investigation and that they are NOT permitted to return to work until contacted by his/her manager.
- Ensure that alleged employee offenders are escorted from the Medical Center property by Security/Support Services.

Security/Support Services shall, upon receipt of a report of a threat or violent act against a patient, visitor or employee, immediately follow these procedures:

- Assign an officer (s) to assess any immediate or imminent violent situation and respond as appropriate.
- Immediately notify the Watch Commander/Supervisor on duty.
- Redirect patients or bystanders as appropriate.
- Determine if there are any injuries and ensure that proper medical assistance is obtained.
- If a threat, the Watch Commander/Supervisor shall immediately notify the victim of the threat and provide them with instructions on the legal process as necessary.
- Offer protective services while on Medical Center's property, appropriate to the seriousness of the threat, including but not limited to:
  - o Escort by Security/Support Services personnel from work area to parking lot or public transportation.
  - o Extra Security/Support Services patrols while the person is at work.

Security/Support Services shall temporarily re-assign parking on campus at no additional charge to the employee. The Watch Commander/Supervisor on duty shall:

- Communicate a threat and the protective service plan that is in place to all Security/Support Services shifts via the internal communications process of the Security/Support Services Department.
- Notify the Security/Support Services Manager of the incident and the action taken. Additional notifications will be made at the direction of the Security/Support Services Manager.
- Ensure that reports are completed for all Workplace Aggression incidents.
- Submit copies of reports to the Executive Director of Security/Support Services Manager, Director of Facilities and Security/Support Services and Vice-President and Chief Human Resources Officer within 24-hours of the reported incident. Subsequent follow-up reports shall be forwarded as soon as practicable.

Procedures for Restricting Premises Access

When a determination is made that special Security/Support Services precautions should be undertaken to restrict a person(s) access to the Medical Center premises, the appropriate staff member making the recommendation shall notify the Security/Support Services Manager, or designee.

The following applies to restricting employees:

- Upon receiving a recommendation that special Security/Support Services precautions should be taken, the Security/Support Services Manager, or designee, shall assess the situation and take all necessary and appropriate action. If an employee is the alleged offender, the Security/Support Services Manager or designee will contact Employee Labor Relations to determine the employee's employment status and confirm whether or not access to the Medical Center is restricted or prohibited.
- Employees who are restricted from the workplace shall be informed of the restrictions, and that violating such restrictions will result in termination. The affected employee's manager and Security/Support Services shall take those steps necessary to enforce the restrictions, including, but not limited to, cancellation of the affected employee's identification badge/"swipe" access, suspension of parking privileges and notification of the restrictions to other management and Security/Support Services personnel.
- The Security/Support Services Manager or designee will be responsible for circulation of photographs of employees only after consultation with, and authorization from, Employee Labor Relations and the Vice-President and Chief Human Resources Officer. Security/Support Services personnel shall maintain circulation of information in a confidential manner at all times, pursuant to Security/Support Services police 95.020, CONFIDENTIALITY.

The following applies to restricting non-employees:

- Security/Support Services shall implement those actions deemed necessary and appropriate to deny access to Medical Center property to all non-employees who have been restricted.
- Circulation of information regarding individuals not employed by the Medical Center shall be done only with the approval of the Director of Security/Support Services. Requirements of the CONFIDENTIALITY policy shall be followed even in non-employee situations.

Employee Assistance Program

The Medical Center may refer employees who engage in, are witnesses to or the victims of a violent act or potentially violent act to the Employee Assistance Program. Where appropriate the department manager, Administrator on Call (AOC) or Vice-President will contact the EAP for a Critical Stress Debriefing Team to provide emotional support to victims, staff (including others working in the area), witnesses to the incident, patient and/or visitors involved.

Threat Assessment

The Workplace Violence Prevention Task Force, in conjunction with Security/Support Services and department manager as necessary will conduct initial hazard assessments Medical Center-

wide, with periodic reassessment thereafter. Initial and follow-up reports will be reported to the Security/Support Services Oversight Committee quarterly by the Security/Support Services Manager.

The Security/Support Services Department, in conjunction with management and employees of the affected departments, will assess the vulnerability to workplace aggression and implement preventive measures, where appropriate.

Training and Education

All employees, including managers and supervisors, will receive initial training on the Medical Center Workplace aggression Policy, and appropriate retraining thereafter. Additionally, all newly hired employees will receive a full explanation and description of the Policy during New Employee Orientation, with appropriate retraining thereafter.

Initial specialized training will be offered to all staff who work in areas determined to be high risk by the Security/Support Services assessment, with appropriate retraining thereafter.

Training records shall be kept on file in the Human Resource Department.

Incident Reporting and Recordkeeping

The Medical Center will maintain an accurate record of all workplace aggression incidents. All incidents must be reported as soon as possible, and documented in detailed written Incident and/or Occurrence reports. Incident reports will be kept by the Medical Center for a minimum of seven (7) years from the date of the occurrence.

Employee injuries requiring more than first aid, lost time injuries, injuries that require modified duty, or injuries that cause loss of consciousness, will be recorded on the OSHA 200 log by the Worker's Compensation Office.

The Vice President and Chief Human Resources Officer is responsible for the interpretation and revision of this policy. All UCMC employees are responsible for the implementation of this policy.

REFERENCES: None

CROSS-REFERENCES: None

ATTACHMENTS: NONE

_____

Terry Solem
Chief Human Resources Officer


_____

Sharon O'Keefe

President


Issued: September, 1999 Workplace Aggression
Revised: October 2004
Reviewed: September, 2001, October 2004, October 2005, November 2009, December 2012
Issued/Revised by: _____
EFFECTIVE DATE: September, 1999
Approved by: _____

# BAILEY DECLARATION

# EXHIBIT D



**THE UNIVERSITY OF**
**CHICAGO**
MEDICINE
THE UNIVERSITY OF CHICAGO
MEDICAL CENTER

| | | | |
|---|---|---|---|
| **POLICY NAME:** | Employee Termination | **REVISED DATE:** | October 2014 |
| **POLICY NUMBER:** | HR212 | **ISSUE DATE:** | March 1983 |
| **SECTION:** | Human Resources | **REVIEW DATE:** | December 2011 |

### POLICY:

It is the policy of The University of Chicago Medical Center to process all employee terminations in a consistent and timely manner and to conduct exit interviews for all employees, whenever possible, who have voluntarily ended their employment.

### PURPOSE:

### DEFINITIONS:

Employees leaving by reason of voluntary resignation are expected to give their department's adequate advance notice equal to but not less than two (2) weeks for hourly employees and one (1) month for salaried employees in order to be eligible for re-hire.

A <u>voluntary resignation</u> Is defined as one resulting from:
- Resignation for personal reasons or to pursue employment elsewhere, including the University of Chicago.
- Retirement.
- Long Term Disability.
- One (1) year continuous absence from work for any reason.

### Notice of Resignation

The required notice of resignation [two (2) weeks for hourly employees, (1) one month for salaried employees] provides a department the opportunity to plan and coordinate its staffing needs in preparation for an employee's departure. For this reason, employees are expected to work during their notification period. While employees may request to utilize limited vacation/personal holiday time after providing notice of resignation, departments retains the discretion to grant or deny vacation/personal holiday requests based upon operation needs. If vacation/personal holiday time was requested and approved prior to notice of resignation, a department may reverse approval to prevent a negative Impact upon operations. A vacation/personal holiday may not be used to cover an absence on the designated last day of employment; an employee's final date of employment will be recorded as the last day he/she actually worked.

Page 1 of 7

UCMC0382

## Involuntary Termination

An involuntary termination is one where the Medical Center has initiated the process to terminate the employee's employment. An involuntary termination may occur due to a reduction-in-force, elimination of a position or due to unacceptable action by an employee. A list of some actions, considered serious enough that a single violation may result in immediate discharge and/or involuntary termination, include but are not limited to the following:

1. Failure to satisfactorily complete the probationary period for any reason.

2. Engaging or participating in physical violence, and/or the threat of physical violence or other inappropriate conduct against any person or property.

3. Theft, destruction or misappropriation of Medical Center's, patients', visitors' or co-employees' property.

4. Refusal to follow directives from or perform assigned work duties as directed by an immediate supervisor or an individual in a supervisory capacity (insubordination).

5. Abusive, careless, inconsiderate or inappropriate treatment of patients, their families, visitors or co-employees.

6. Performing job assignments grossly inconsistent with outlined job duties and responsibilities, or Medical Center policies and procedures.

7. Falsification of Medical Center records or information, including but not limited to time and attendance records, patient information and the employment application.

8. Unauthorized access, alteration or release of Medical Center or patient records or information, whether paper or electronic.

9. Failure to meet conditions of corrective action. (See Progressive Corrective Action Policy HR703).

10. Reporting to or being at work under the influence of alcohol, unauthorized controlled substances or illicit drugs, which may include intoxication, drug use or failure to take prescribed medications properly (see Fitness for Duty Policy HR1003).

11. Violating Policy HR609 pertaining to Alcohol and Drug Use on Medical Center premises.

12. Refusing to comply with a supervisor's directive to undergo a Fitness For Duty evaluation, and/or comply with any required component of the Fitness For Duty evaluation.

13. Failure to adhere to recommended drug/alcohol treatment plans.

14. Harassing or discriminating against employees, patients or visitors on the basis of race, national origin, ancestry, religion, sex, sexual orientation, marital or parental status, color, age, handicap, veteran status or any other identifying trait.

15. Engaging in malicious or careless acts resulting in the damage or loss of Medical Center, employee, patient or visitor property or information, or injury to anyone.

16. Unauthorized possession or concealment of weapons while on UCMC premises.

17. Being convicted of a felony.

UCMC0383

18. Unauthorized absence from work for three consecutive days. (See Job Abandonment Policy HR507).

19. Failure to cooperate with internal or external investigations involving UCMC business, including failure to maintain the confidentiality of matters related to such investigations, or patient activities, or providing false information in an investigation.

20. Sleeping or giving the appearance of sleeping on the job.

21. Misuse of automated data management information processing systems, including the violation of Administrative polices 6-11, 6-15, 6-16 regarding Systems Security access and use.

22. Failure to return from a leave of absence.

23. Inappropriate or excess use of any UCMC computer information systems (e-mail, internet, voicemail).

24. Gambling

25. Selling or distributing pirated materials, e.g. CD's and videos.

An UCMC involuntary termination as described in Human Resources Policy HR203 and/or applicable collective bargaining agreements.

## Effective Date

The last day the employee worked, except following leaves of absence where the effective date is the date on which the employee fails to report to work once the leave and/or any approved extension has expired.

## Exit Interview

An interview conducted for voluntary terminations in a confidential manner by the Employment Office or the Nursing Career Center to identify reason(s) for an employee's resignation and to gather information that will benefit UCMC for development of improvement initiatives. Information obtained as a result of an exit interview is not made part of the terminated employee's personnel file, but used in summary form as a means to determine patterns or trends in the working environment at the Medical Center.

The employee is responsible for scheduling the exit interview with the Employment Office (2-0198 and press "0") or for the nursing staff, the Nurse Recruitment (2-1734) at least seven (7) days prior to the employee's departure.

## PROCEDURES:

### Voluntary and Involuntary Terminations

For both voluntary and involuntary terminations, managers will:

1. be responsible for completing Personnel Action Forms (PAF), indicating the type of and reason for the employee's termination as well as the employee's eligibility for rehire; and

Page 3 of 7

UCMC0384

2. Verify address information with the employee. If there is a change of address, complete the Demographic Change (Section V) on the PAF to ensure the employee receives their final pay check, W-2 and all future correspondence.

3. Forward the PAF to the Compensation Office (c/o Records Specialist) along with supporting documentation (i.e. letters of resignation, termination justification, previous warnings, etc.).

4. For voluntary terminations, the employee must complete a Property Receipt/Termination Clearance Form (see page 6). Provide adequate time away from assignments for the employee to complete the form and for the employee to return property of the Medical Center. The completed form is to be forwarded to the Employment Office, 800 E. 55th Street, Chicago, IL 60615.

5. Inform the employee that an exit interview should be scheduled with the Employment Office (Extension 2-0198 and press "0"). For nursing staff, employee should contact the Nurse Recruitment (Extension 2-1734).

6. For both voluntary and involuntary terminations, managers should terminate employee's access to automated data management information processing systems, e-mail and telecommunication codes.

In addition to the above procedures, managers will adhere to the following regarding involuntary terminations:

1. The approval of the Vice President and Chief Human Resources Officer is required for all involuntary terminations.

2. The supervisor must submit a memorandum recommending the action to an Employee Relations or Labor Relations prior to any action taking place.

3. Upon the Vice-President's approval of the recommendation for discharge, the Office of Employee/Labor Relations then advises the department of the steps necessary to discharge the employee appropriately.

**Parking**
The employee should contact the Parking Office to cancel their parking agreement, Extension 2-4381 (if applicable).

**Benefits**
The employee shall receive written confirmation regarding the continuation and/or cessation of benefits.

These materials should include specifics on each of the following benefits, as appropriate to the individual employee:

- Health & Dental Insurance
- Retirement Plans
- Group & Universal Life Insurance
- Personal Accident Insurance
- Flexible Spending Accounts

Page 4 of 7

UCMC0385

- Vacation & Personal Holidays
- Sick Time
- Short and Long Term Disability
- COBRA

**Final Paycheck**

Voluntary terminating employees may make previous arrangements with Payroll to pick-up their final paycheck, otherwise, it will be mailed one week, after issue.

Involuntary terminating employees will receive their final paycheck by mail.

The Vice President and Chief Human Resource Officer is responsible for the interpretation and revision of this policy.

**REFERENCES:**

To outside sources, if applicable.

**CROSS-REFERENCES:**

To other UCMC policies, if applicable.

**ATTACHMENTS:**

Yes

_____

Bob Hanley
Vice President and Chief Human Resources Officer

_____

Sharon O'Keefe
President

Issued: March 1983 (Formerly Employee Separations) Employee Termination
Revised: December 1992, June 1994, October 1996, September 2001, May 2003, October 2004, September 2006, October 2014
Reviewed: October 2004, October 2005, September 2006, November 2009, December 2011
EFFECTIVE DATE: May 2003 Issued/Revised by:_____
Approved by:_____

Page 5 of 7

UCMC0386

# BAILEY DECLARATION

# EXHIBIT E

Print Form


THE UNIVERSITY OF
CHICAGO
MEDICAL CENTER

## CORRECTIVE ACTION FORM FOR BIWEEKLY EMPLOYEES

**Employee Information**

Employee Name: Belinda Smith     Job Title: FoodService Utility Worker

Dept./Cost Center: Food Service     Manager: Amy Grzyb

Date Issued:   2-8-2013     Union: 743

**Employee/Labor Relations must be consulted prior to issuing a Final Written Warning or Termination**

### I. CORRECTIVE ACTION (Check only one)

1. ☒ Documented Verbal Warning (*Retain in Department File Only*)
2. ☐ Written Warning
3. ☐ Final Written Warning
4. ☐ Termination

Was the employee suspended pending investigation?   Yes ☐   No ☒

Employee was suspended without pay for    working days, from    through

### II. REASON(S) FOR CORRECTIVE ACTION

☐ Violation of Biweekly Employee Attendance Policy    ☒ Unsatisfactory Work Performance    ☐ Failure to comply with Pride Values/Care Standards/Workplace Civility Policies

**Employee/Labor Relations must be consulted prior to issuing corrective action for the following:**

☐ Violation of UCMC Harassment Policy

☐ Falsification or misuse of records or information

☐ Insubordination (refusal to follow directive given by individual in a supervisory role)

☐ Sleeping or giving the appearance of sleeping on the job

☐ Theft

☐ Job abandonment

☐ Possession or use of intoxicants/Violation of Fitness for Duty Policy

☒ Performing job assignment grossly inconsistent with outlines job duties and responsibilities

☐ Abusive or threatening language or behavior; fighting

☐ Other

Description or reason(s) for action:

1. Time management: Time to perform core functions of position are below department standards such as
- On January 28 2013, was observed scrapping 6 dirty trays, which took approximately 25 mins
- takes 45 min + to collect dirty trays from Comer floors

A copy of this form was: ☒ given to/   ☐ mailed to the above employee on    (date).

| | Date |
|---|---|
| Employee Signature *refused to sign* | 2-8-13 |
| Manager Signature | 2-8-13 |
| Union Representative Signature (or/if) Union Representative Waived   (Employee Initials) | 2-8-13 |

EXHIBIT 16 PENGAD 800-631-6989 Smith 3/28/18

Please make copies for the following: Union Steward (if applicable); Department File; and Employee/Labor Relations- except Documented Verbal Warning; which is retained in Department File Only.

Revised E/LR 1/2010

UCMC0123

1. Time management:  Time to perform core functions of position are below department standards such as

- On January 28 2013, was observed scrapping 6 dirty trays, which took approximately 25 mins
- takes 45 min + to collect dirty trays from Comer floors
- efficiency in completing job requirements, such as stocking hot and cold areas

2. Communication:

- lack of communication between 322/321 to complete the duties efficiently.

3. Attitude:

- has exhibited poor attitude towards peers
- when asked to do a particular task that deviates from own personal routine, she exhibits poor attitude towards manager on duty which includes rolling eyes, mumbling underneath her breath and had various gestures
- Consistently question assignments/tasks given by management such as on Tuesday 2-5-2013 when asked to strip carts instead of collect dirty trays.  She spent approximately 20 mins discussing with manager on duty how that task will put her behind.

UCMC0124

# BAILEY DECLARATION

# EXHIBIT F

Revised_1/14/10



THE UNIVERSITY OF
## CHICAGO
MEDICAL CENTER

## CORRECTIVE ACTION FORM FOR BIWEEKLY EMPLOYEES

| | |
|---|---|
| Name: Belinda Smith | Job Title: FSW or FSRW or Cook or Baker |
| Department/Cost Center: FS - 373220; 373202; 373210 | Manager: DONNA ANDERSON |
| Date Issued: 11-14-13 | Union: 743 |

### CORRECTIVE ACTION (*Check only one*)

☐1. Documented Verbal Warning *(Retain in Department File Only)*

☒2. Written Warning

**Employee/Labor Relations must be consulted prior to issuing the following:**

☐3. Final Written Warning (For more serious infractions)
☐4. Suspension Pending Investigation for ____working days, from _____ through _____
(For more serious infractions)
☐5. Termination

### REASON(S) FOR CORRECTIVE ACTION

☐Violation of Biweekly Employee Attendance Policy
☒Unsatisfactory Work Performance
☐Failure to comply with Pride Values/Care Standards/Workplace Civility Policies

**Employee/Labor Relations must be consulted prior to issuing corrective action for the following:**

☐Violation of UCMC Harassment Policy
☐Falsification or misuse of records or information
☐Insubordination (refusal to follow directive given by individual in a supervisory role)
☐Sleeping or giving the appearance of sleeping on the job
☐Theft
☐Job abandonment
☐Possession or use of intoxicants/Violation of Fitness for Duty Policy
☐Performing job assignment grossly inconsistent with outlined job duties and responsibilities
☐Abusive or threatening language or behavior; fighting
☐Other

Description of reason(s) for action: on 11-14-13 Belinda work position #261 ... poor work peformance during the time of 6:30 and 9am Belinda retreaved 4 carts from units. in this time frame #261 is required to bring down carts deliver dylassis , set up soak bins, work the dish mabine theese task were not completed . belind work Is not completeded in time frame alloted . continued infractions will progress corrective action up to and including termination.

A copy of this form was: ☒given to / ☐mailed to the above employee on _____ (date). 11-14-13
Employee Signature/Date: Refused to Sign! AM
Union Representative Signature/Date: _____ Union Representation Waived_____ (Employee Initials)
Supervisor Signature/Date: DONNA ANDERSON &

Please make copies for the following: Employee; Union Steward (if applicable); Department File; and Employee/Labor Relations- except Documented Verbal Warning; which is retained in Department File Only

EXHIBIT
17
Smith 3/28/18

UCMC0125

Had several call offs this morning and were short a loader. We did have an extra RSA so we moved people around to cover off positions.

Note: Schedules changes are made and the crew sheets were not updated. Even though they are all done, I would suggest double checking them on a constant (with their bumping abilities, shift switches and our call offs, it's hard to keep up).

We met with Belinda and had union rep, Devina, present as well. We discussed concerns about Belinda's job performance identifying key issues such as the speed at which she works ( and not completing 2 soiled cart change outs per shift), and also pushing the cart ahead of her and slowing sauntering up to it, only to push it again. Richard did note that this was the second time that she was spoken to about this behavior. I did discuss that I have reviewed the job flows and made adjustments to even the workout between both positions. Davina expressed concern that the union was not notified about this change and we have agreed to have communication on the new job flow and having Belinda back to her position as described by the job flow. It should be noted that Belinda did not take responsibility for her behavior and did continue to point out what others are doing wrong. (Richard, from here I will let you document the disrespect, and any other points about the meeting that you feel should be documented). We closed the meeting and asked Belinda that for the time being she not worry about what others do, make sure she works fast enough to get to her carts twice a day so nothing is left over until the following shift and in turn the next day and to also hold onto the cart the entire time that she is moving the cart.

We will meet with both Belinda and Marcellus on Monday to provide and review the new job flows. Reiterate expectations

Service recovery: TS519 – dirty silverware complaint – knife did have some residue on it and fork had water spots. No other issues. Patient is happy with our service but thought someone should know of silverware so it could be corrected. He appreciated the visit.

Need a lock box for cash for guest trays – maybe a small one to keep in the desk drawer. The money is to be passed in after each shift? Richard and Erin to be working on routine for this as Billings is the only area left to establish a good routine. Also, make sure pages come to us for every guest tray – a few slip through.

Position 222B should start at 7am. Yesterday I worked the line and things were smoother and we did not have long wait times related to our side backing up. Again this morning we had the third person helping on the start and we caught up to our tags. If accommodations were made for Claudia, I suggest that when anyone aside from her works it start at 7 and then work on system or change for the days that Claudia is scheduled.

UCMC0126

# BAILEY DECLARATION

# EXHIBIT G

Revised_1/14/10



THE UNIVERSITY OF
**CHICAGO**
MEDICAL CENTER

## CORRECTIVE ACTION FORM FOR BIWEEKLY EMPLOYEES

| Name: Belinda Smith | Job Title: FSW or FSRW or Cook or Baker |
|---|---|
| Department/Cost Center: FS - 373220; 373202; 373210 | Manager: DONNA ANDERSON |
| Date Issued:   4/9/2014 | Union: 743 |

## CORRECTIVE ACTION (*Check only one*)

☐1. Documented Verbal Warning (*Retain in Department File Only*)

☒2. Written Warning

### Employee/Labor Relations must be consulted prior to issuing the following:

☐3. Final Written Warning (For more serious infractions)

☐4. Suspension Pending Investigation for _____working days, from _____ through _____
(For more serious infractions)

☐5. Termination

## REASON(S) FOR CORRECTIVE ACTION

☐ Violation of Biweekly Employee Attendance Policy
☒ Unsatisfactory Work Performance
☒ Failure to comply with Pride Values/Care Standards/Workplace Civility Policies

### Employee/Labor Relations must be consulted prior to issuing corrective action for the following:

☐ Violation of UCMC Harassment Policy
☐ Falsification or misuse of records or information
☐ Insubordination (refusal to follow directive given by individual in a supervisory role)
☐ Sleeping or giving the appearance of sleeping on the job
☐ Theft
☐ Job abandonment
☐ Possession or use of intoxicants/Violation of Fitness for Duty Policy
☐ Performing job assignment grossly inconsistent with outlined job duties and responsibilities
☐ Abusive or threatening language or behavior; fighting
☐ Other

**EXHIBIT**
*18*
Smith 3/28/18
PENGAD 800-631-6989

Description of reason(s) for action: On 4/8/2014 @ approx 2:15pm the dishroom work station that you were working was found in the condition of the attached photo. You were trained and directed not to leave the station in that condition. You refuse to follow directions and state "that you would do the work the way you wanted and it was not up to Managers to show you how to do your job". You are unable to complete the work assigned in the job flow within the time required. Your work was left incomplete and had to be finished by two Managers-Mr. Karl Betts and Mr. Terry Bomkamp.

On 4/9/2014 at 6:45 am you were retrained by Manager, Mr. Terry Bomkamp on how to complete the work assigned to you in the job flow. Your dishroom work station was found in an unacceptable condition and not in accordance to the most recent training completed on 4/8/2014. See attached photo's taken approximately 10:15am. Training had been done with you several times in the last 2 weeks by Mr. Karl Betts, Manager. Mr. Terry Bomkamp, Manager, had cleared the dirty dishes that accumulated and put the work station back in correct order. He then attempted to retrain you @ 11:20am with the assistance of Mr. Rodney Smith, Manager and Ms. Sandra Jackson, Manager. You refused to listen, walked away several times, raised your voice to a level of shouting. You further stated that you were not going to follow the training and directions given. You were then advised to take your break and return to work at the assigned time and follow the training outlined by Mr. Terry Bomkamp, Mr. Rodney Smith and Ms. Sandra Jackson.

UCMC0127

Revised_1/14/10

A copy of this form was: ☐given to / ☐mailed to the above employee on        (date).

Employee Signature/Date:_____

Union Representative Signature/Date:_____Union Representation Waiver_____(Employee Initials)

Supervisor Signature/Date: **DONNA ANDERSON &**

---

Please make copies for the following: Employee; Union Steward (if applicable); Department File; and Employee/Labor Relations- except Documented Verbal Warning; which is retained in Department File Only

UCMC0128