UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BELINDA SMITH, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:16 C 7441 |
| UNIVERSITY OF CHICAGO MEDICAL CENTERS FOOD SERVICE, | ) ) ) ) | Hon. Marvin E. Aspen |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Belinda Smith filed this employment discrimination action against the University of Chicago Medical Centers Food Service ("Defendant")[1], asserting that Defendant, on account of her disability, terminated her employment, failed to promote her, failed to stop harassing her, and retaliated against her, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. (Am. Compl. (Dkt. No. 9) at ¶¶ 9, 12.) Presently before us is Defendant's motion for summary judgment. (Dkt. No. 37.) For the reasons below, we grant Defendant's motion.

---

[1] Defendant states that it has been improperly named in the Amended Complaint as there is no entity named "University of Chicago Medical Centers Food Service," and that the proper Defendant is "The University of Chicago Medical Center." (Def.'s Statement of Facts ("SOF") (Dkt. No. 40) at 1 n.1.) While the Plaintiff has not moved to correct this misnomer, "in light of the outcome of Defendant's motion, the misnomer is not of practical significance because it is not disputed that the proper defendant is before the court." *Jones v. Centurion Inv. Assocs., Inc.*, 268 F. Supp. 2d 1004, 1005 n.1 (N.D. Ill. 2003).

**BACKGROUND**

Plaintiff was employed by Defendant from February 2005 to June 2015 as a Food Service Worker.[2] (SOF ¶¶ 3, 5.) In 2012, she allegedly experienced symptoms including whiplash and sciatic and muscular problems, but was referred to a hospital for a psychiatric evaluation after both emergency room doctors and her primary care doctor found no condition. (*Id.* ¶¶ 9.) Plaintiff subsequently took a leave of absence from her job from April 2012 to November 2012. (*Id.* ¶ 10.) Plaintiff alleges that Defendant began discriminating against her around this same time, on or about April 26, 2012. (Am. Compl. ¶ 6; SOF ¶ 11.)

From 2013 to 2014, Plaintiff experienced a slew of negative performance issues at work. For example, Defendant at various times reprimanded Plaintiff for her poor time management, communication, attitude towards coworkers, and failure to complete her assigned tasks in a satisfactory or fashion. (SOF ¶¶ 12–14, 16–17.) Defendant suspended Plaintiff for one week in April 2014 for her unsatisfactory work performance. (*Id.* ¶ 15.) During a meeting in June 2014 to discuss her work performance, Plaintiff was "disruptive and argumentative, and would not allow her manager to speak about her performance." (*Id.* ¶ 16.) In July 2014, Defendant issued a final written warning to Plaintiff for her unsatisfactory work performance and her behavior

---

[2] Unless otherwise specified, we draw these facts from Defendant's statement of undisputed materials facts and attachments thereto. (SOF; Exhibits to SOF (Dkt. No. 41).) Despite Defendant's compliance with Local Rule 56.2 and providing a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," Plaintiff failed to respond to Defendant's SOF. Although *pro se* litigants are entitled to leniency, they must still comply with procedural rules. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). Thus, as set forth in Local Rule 56.1(b)(3)(C), we deem Defendant's SOF admitted for the purposes of its summary judgment motion.

when confronted about it. (*Id.* ¶ 17.) As Plaintiff understood it, this final warning meant that future work-performance failures could lead to her termination. (*Id.*; Deposition of Belinda Smith ("Smith Dep") SOF, Ex.1, at 180.)

In 2014, Plaintiff had a child and took a leave of absence from mid-September to early November. (*Id.* ¶¶ 19, 21.) Plaintiff's performance issues continued after she returned to work. she became confrontational with her coworkers, accused them of conspiring to get her fired, interfered with her coworkers' duties, and failed to follow her manager's directions. (*Id.* ¶¶ 22–26.) Defendant suspended Plaintiff in February 2015 for her hostile behavior. (*Id.* ¶ 27.) Defendant issued a second, written final warning to Plaintiff on March 20, 2015 for her unsatisfactory work performance and "inconsiderate or inappropriate treatment of co-employees." (*Id.* ¶ 28.) In both April and June 2015, Plaintiff again made threatening comments to her coworkers—in one instance telling a coworker that "God was going to get you" and in another, after receiving instructions to complete her duties, telling her coworkers "I will fight people in here today." (*Id.* ¶¶ 30–31.) Considering these events, Defendant again suspended Plaintiff on June 5, 2015 and "[a]fter a review of Plaintiff's disciplinary history, and recent incidents of poor performance and aggression towards co-workers and management, Plaintiff was terminated effective June 5, 2015." (*Id.* ¶ 33.)

Plaintiff, represented by counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 12, 2015. (*Id.* ¶ 37; Am. Compl. at Pg.ID#: 82.) In her Charge of Discrimination, Plaintiff alleged: "I was discriminated against because of my disability. In 2012 I notified University of Chicago Medical Center of my disability . . . ." (Am. Compl. at Pg.ID#: 82.) Plaintiff's Charge of Discrimination did not contain any information concerning her alleged disability. (*Id.*) The EEOC dismissed Plaintiff's

Charge of Discrimination and issued a right-to-sue letter on June 2, 2016. (*Id.* at Pg.ID#: 81.) This suit followed on July 21, 2016. (Compl. ¶ 9, 12.) Plaintiff filed the current Amended Complaint on September 14, 2016. (Am. Compl.) Defendant filed its motion for summary judgment on June 25, 2018. (Dkt. No. 37.)

## LEGAL STANDARD

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute "exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (a genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true and draw all reasonable inferences in that party's favor. *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013); *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. We do not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson*, 477 U.S. at 249–50, 106 S. Ct at 2511). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) (citation omitted).

**ANALYSIS**

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To survive summary judgment, Plaintiff must first show there is at least a genuine dispute of material fact as to whether she is disabled within the meaning of the ADA. *See Roth v. Lutheran General Hosp.*, 57 F.3d 1446, 1453–54 (7th Cir. 1995) ("To succeed on his claims under the Rehabilitation Act and the ADA, Roth must meet the threshold burden of establishing the he is 'disabled' within the meaning of the statutes."); *see also Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005) (addressing first whether the plaintiff was disabled within the meaning of the ADA and observing that "[i]f he is not entitled to protection under this statute, then there is no need to reach the later parts of the inquiry"). The statute defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

"An individual can prove that she is disabled for ADA purposes in one of three ways: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment by her employer." *Rooney*, 410 F.3d at 381 (citing 42 U.S.C. § 12102(2)). In her complaint, Plaintiff states that Defendant retaliated against her "due to personal medical relation. I was terminated to support the University of Chicago Medical Centers doctors [sic] misdiagnosis. The diagnosis had caused me to lose custody of my child []." (Am. Compl. ¶ 12.) However, nothing in Plaintiff's filings or the record more generally establishes what Plaintiff's

disability is or what it entails. *See, e.g.*, *Young v. MilliporeSigma*, 2018 WL 2766211, at *2 (E.D. Wis. June 8, 2018) ("Young alleges that she told MilliporeSigma's human resources department that she had been discriminated against based on her disability, but she does not allege what her disability is. Without this basic piece of information, Young does not present a valid ADA claim."); *Johnson v. Beach Park Sch. Dist.*, 103 F. Supp. 3d 931, 940 (N.D. Ill. 2015) (finding that "vague assertions of not being able to stand all day or walk for miles and miles" did not create a genuine issue of fact as to whether the plaintiff was disabled within the meaning of the ADA). Indeed, as Defendant points out, Plaintiff testified that she was not disabled in 2014 through 2015—that is, leading up to and at the time of her termination. (SOF ¶¶ 41–42; Smith Dep. at 92 ("Q: Let's talk about 2014–2015. Did you have a disability at that time? A: No.").) There is simply no evidence in the recording support Plaintiff's assertion of disability. While Plaintiff cursorily claims in her Charge of Discrimination attached to her Amended Complaint that she notified Defendant of her alleged disability in 2012, (Am. Compl. at Pg.ID#: 82), there is no evidence that Plaintiff ever informed Defendant of her claimed disability through any channel. Indeed, Plaintiff testified that she never told anyone at the University of Chicago Medical Center that she was disabled. (SOF ¶ 46; Smith Dep. at 211–212 ("Q: Did you ever inform anyone at the University of Chicago Medical Center that you were disabled or had a disability? A: No.").) There is furthermore no evidence that Defendant considered Plaintiff to be disabled, and her supervisors both state they did not consider her to be disabled. (*Id.* ¶ 51–52, 64.) Without any contrary evidence to suggest what her disability may be, what it may entail, or that Defendant ever considered her to be disabled, Plaintiff cannot show there is a genuine issue as to whether she is disabled within the meaning of the ADA. Accordingly, we grant Defendant's motion for summary judgment.

## CONCLUSION

For the above reasons, we grant Defendant's motion for summary judgment. It is so ordered.

                                                                                         _____
Marvin E. Aspen
United States District Judge

Dated: January 7, 2019
       Chicago, Illinois